\_\_\_ FILED   \_\_\_ ENTERED
\_\_\_ LOGGED   \_\_\_ RECEIVED

3:42 pm, Jul 23 2024

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

In the course of investigating the co-defendant, Frederick Douglass Moorefield, Jr., for his involvement in dogfighting, agents reviewed iCloud records showing that Defendant, Mario Damon Flythe, was affiliated with the same dogfighting enterprise as Moorefield. Agents determined that Defendant operated under the kennel name "Razor Sharp Kennels." Evidence obtained from Defendant's digital records, a search of Defendant's home, and witness interviews confirms that Defendant has used his home to keep, train, and breed dogs for dogfighting for several years.

A review of Defendant's phone showed numerous message exchanges regarding dogfighting—primarily over the instant messaging applications WhatsApp and Telegram—with members of a group identified by law enforcement as the "DMV Board." In addition to arranging fights and wagers, Defendant and members of the DMV Board discussed the breeding and training of fighting dogs, procuring supplies for the maintenance and feeding of fighting dogs, and criminal investigations and prosecutions of dogfighters. In some exchanges, Defendant and others discussed the indictments of DMV Board members and speculated about the identity of a "snitch."

A review of Defendant's instant messages revealed several exchanges arranging—or "hooking"—dogfights. In these conversations, Defendant would identify the weight and sex of the dog he wanted to sponsor in a fight. Other dogfighters would then propose a fight against their own dogs or match Defendant with another of their contacts who had a dog in the same weight class. The dogfighters would then agree on wagers and set a date for the fight, usually six to eight weeks after the match was made. In addition to stating the amount to be paid to the winner of the fight, dogfighters agreed on forfeit—or "fit"—payments to be made in the event that a dogfighter backed out of the fight before it was scheduled to take place.

After hooking a fight, Defendant trained his dogs in a process known as a "keep." The Defendant's typical keep schedule for a dog involved physical training (using treadmills, weighted collars, and other accessories), a diet plan, and the use of steroids. Defendant obtained steroids and other veterinary drugs through various contacts in his dogfighting network, not through legitimate veterinary prescriptions.

When Defendant sponsored a dog in a fight, the fight ended only when a dog died or when the owner forfeited the match—either through the dog "quitting" the fight or the owner "picking up" the dog.

Between January 2019 and October 2023, CashApp records reflect that Defendant received approximately $2,800 in payments related to the dogfighting conduct to which he is pleading

guilty. Defendant also sent money to dogfighting contacts in connection with the dogfighting enterprise. In some instances, transactions were given misleading labels in order to disguise the true nature of the transferred money. The approximately $2,800 in U.S. currency Defendant received on CashApp constitutes proceeds from the dogfighting enterprise. The money the Defendant received via CashApp was deposited into an account belonging to Defendant at M&T Bank ending in x9774. Defendant agrees that this sum does not reflect any proceeds traceable to the dogfighting enterprise that were obtained by other means, such as through a physical cash transaction.

When agents searched Defendant's residence on September 6, 2023, they recovered a total of seven pitbull-type dogs from the premises. Four dogs were found chained to posts or poles in fenced-in cages in property's back yard, and three dogs were found in large metal cages in the basement. In each of the cages in the back yard, agents observed water bowls that contained either only dirt or water that appeared contaminated. Photographs taken during the search also show that canine feces were present in both the cages in the back yard and basement. Agents observed that the back yard appeared to be infested with fleas, and four of the seven dogs were infested with fleas. Defendant agrees that he bred and/or trained dogs for the purposes of sponsoring them in dogfights.

SO STIPULATED:

_____
Alexander Levin
Darryl L. Tarver
Assistant United States Attorneys

_____
Mario Damon Flythe
Defendant

_____
James C. Tuomey, Esq.
Counsel for Defendant