From:                                                                08/22/2024 13:26     #045 P.001



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Alexander Levin*  *Suite 400*  *DIRECT: 410-209-4948*
*Assistant United States Attorney*  *36 S. Charles Street*  *MAIN: 410-209-4800*
*Alexander.Levin@usdoj.gov*  *Baltimore, MD 21201-3119*  *FAX: 410-962-0717*
*tlf 08202024*

USDC- BALTIMORE
'24 SEP 13 PM 12:15

August 20, 2024

Andrew C. White, Esq.
Silverman, Thompson, Slutkin & White, LLC
400 East Pratt St., Ste. 900
Baltimore, MD 21202

     Re:    <u>United States v. Frederick Douglass Moorefield, Jr.,</u>
            Criminal No. RDB-23-354

Dear Counsel:

     This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, **Frederick Douglass Moorefield, Jr.** (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **August 23, 2024**, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offense(s) of Conviction

     1.    The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with Conspiracy to Engage in Animal Fighting, in violation of 18 U.S.C. § 371, and Count Nine of the Indictment, which charges the Defendant with Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises, in violation of 18 U.S.C. § 1952(a)(3). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

Elements of the Offense(s)

     2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

         a.   Count One – Conspiracy to Engage in Animal Fighting, 18 U.S.C. § 371

     That on or about the time alleged in the Indictment, in the District of Maryland:

         i.   the Defendant did knowingly and unlawfully conspire to sponsor and exhibit dogs in animal fighting ventures in violation of 7 U.S.C. § 2156(a) and 18 U.S.C. § 49(a);

Rev. August 2018



    ii. the Defendant did knowingly and unlawfully conspire to sell, buy, possess, train, transport, deliver, and receive dogs for purposes of having the dogs participate in animal fighting ventures, in violation of 7 U.S.C. § 2156(b) and 18 U.S.C. § 49(a);

    iii. the Defendant did knowingly and unlawfully conspire to use instrumentalities of interstate commerce for commercial speech for the purposes of advertising animals for use in animal fighting ventures, promoting, and in other manners furthering animal fighting ventures, in violation of 7 U.S.C. § 2156(c) and 18 U.S.C. § 49(a); and

    iv. the Defendant did knowingly and unlawfully conspire to use instrumentalities of interstate commerce with the intent to promote manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of a business enterprise involving gambling in violation of the laws of Maryland and of the United States, in violation of 18 U.S.C. § 1952(a)(3).

b. Count Nine – Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises, 18 U.S.C. § 1952(a)(3)

That on or about the time alleged in the Indictment, in the District of Maryland, the Defendant used instrumentalities of interstate commerce with the intent to promote manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of a business enterprise involving gambling in violation of the laws of Maryland and of the United States.

Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 371 | No minimum | 5 years | 3 ~~1~~ years | $250,000 | $100 |
| 9 | 18 U.S.C. § 1952(a)(3) | No minimum | 5 years | 3 ~~1~~ years | $250,000 | $100 |

    a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant

Rev. August 2018

2

returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

        c.      Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

        d.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

        e.      Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

        f.      Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

        4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

        a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

        b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

Rev. August 2018

3



  c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

  d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

  e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

  f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

  g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

  h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

Rev. August 2018

4

5.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

6.    This Office and the Defendant stipulate and agree to the Statement of Facts set forth in **Attachment A**, which is incorporated by reference herein.

a.    This Office and the Defendant further agree that the **applicable base offense level is 16** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2E3.1(a)(1) because the offenses of conviction involved an animal fighting venture.

b.    This Office will argue at the time of sentencing that the Defendant warrants an upward variance from the range set forth in the anticipated adjusted offense level because the offense level prescribed by the guideline "substantially understates the seriousness of the offense" in that the Defendant's offense "involved extraordinary cruelty to an animal beyond the violence inherent in such a venture (such as by killing an animal in a way that prolongs the suffering of the animal)." *See* U.S.S.G. § 2E3.1, Application Note 2.

c.    This Office does not oppose a **2-level** reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1-level** decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

Based on the foregoing, the **anticipated adjusted offense level is 13**.

7.    There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

Rev. August 2018

5



### Obligations of the Parties

8. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

9. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

   b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum.

   c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

10. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

11. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute

Rev. August 2018

6



money, property, and/or assets that are, or are derived from, proceeds traceable to the Defendant's illegal activities: a forfeiture money judgment of at least $21,576 in U.S. currency.

12. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. In accordance with Federal Rule of Criminal Procedure 32.2(b)(4)(A), the Defendant specifically agrees that any Order of Forfeiture will become final as to him when the Court enters it.

13. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

14. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

<u>Defendant's Conduct Prior to Sentencing and Breach</u>

15. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

16. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the

Rev. August 2018

7



Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

17. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

18. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to us promptly.

Very truly yours,

Erek L. Barron
United States Attorney

_____
Alexander Levin
Darryl L. Tarver
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_8/22/24_  
Date

_[signature]_  
Frederick Douglass Moorefield, Jr.

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

_8/22/24_  
Date

_[signature]_  
Andrew C. White, Esq.

## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

In November 2018, officers from Anne Arundel County Animal Control responded to a report of two dead dogs in a plastic dog food bag in Annapolis, Maryland. Investigators found mail inside the bag addressed to Defendant, Frederick Douglass Moorefield, Jr., at his known home address, and a necropsy determined that the dogs bore wounds and scarring patterns consistent with their having been used in dogfighting. Following the discovery of those dogs, federal agents began investigating Defendant's connections to a known dogfighting enterprise.

Agents determined that Defendant operated as a dogfighter under the kennel name "Geehad Kennels" and that he was affiliated with a dogfighting enterprise known as "the DMV Board" or "the Board" that operated in and around Virginia, Maryland, and Washington, D.C. Evidence obtained from Defendant's digital records, a search of Defendant's home in Arnold, Maryland, and witness interviews confirms that Defendant has used his home to keep, train, and breed dogs for dogfighting for over 20 years. During the execution of a search warrant at Defendant's home, agents seized a large piece of folded-up carpet from a shed on the property, and this carpet appeared to be stained in several places with blood. The Defendant agrees that he used the carpet as the floor of an arena to stage dogfights or "rolls" (brief test fights between dogs to evaluate the dogs' fighting ability).

A review of Defendant's phone and iCloud account showed numerous message exchanges regarding dogfighting—primarily over the instant messaging applications WhatsApp and Telegram—with other members of the DMV Board. In addition to arranging fights and wagers, Defendant and other members of the DMV Board discussed the breeding and training of fighting dogs, procuring supplies for the maintenance and feeding of fighting dogs, and criminal investigations and prosecutions of dogfighters. In some exchanges, Defendant and others discussed the indictments of other DMV Board members and speculated about the identity of a "snitch" in the group.

A review of Defendant's instant messages revealed several exchanges arranging—or "hooking"—dogfights. In these conversations, Defendant would "call out a weight" by identifying the weight and sex of the dog he wanted to sponsor in a fight. Other dogfighters would then propose a fight against their own dogs or match Defendant with another of their contacts who had a dog in the same weight class. The dogfighters would then agree on wagers and set a date for the fight, usually six to eight weeks after the match was made. In addition to stating the amount to be paid to the winner of the fight, dogfighters agreed on forfeit—or "fit"—payments to be made in the event that a dogfighter backed out of the fight before it was scheduled to take place.

Rev. August 2018

10

After hooking a fight, Defendant trained his dogs in a process known as a "keep." Based on evidence found at Defendant's home and in his iCloud records, Defendant's typical keep schedule for a dog involved physical training (using treadmills, weighted collars, and other accessories), a diet plan, and the use of steroids. Defendant obtained steroids and other veterinary drugs through various contacts in his dogfighting network, not through legitimate veterinary prescriptions.

When Defendant sponsored a dog in a fight, the fight ended only when a dog died or when the owner forfeited the match—either through the dog "quitting" the fight or the owner "picking up" the dog. In the event that one of Defendant's dogs lost a fight but did not die, Defendant killed that dog. One method of killing employed by Defendant involved the use of a device consisting of jumper cables connected directly to an ordinary plug. Defendant plugged the device into a wall socket and attached the cables to the dog, electrocuting it.

Between January 2019 and October 2023, CashApp records reflect that Defendant received approximately $21,576 in payments related to the dogfighting conduct to which he is pleading guilty. Defendant also sent money to dogfighting contacts in connection with the dogfighting enterprise. In some instances, transactions were given misleading labels in order to disguise the true nature of the transferred money, such as a transaction in which Defendant received $1,000 labeled as a "housewarming gift" from a known dogfighter in 2022 (Defendant has lived at the same address for over two decades). The approximately $21,576 the Defendant received on CashApp constitutes proceeds from the dogfighting enterprise. The money the Defendant received via CashApp was deposited into an account belonging to the Defendant at M&T Bank ending in x1798. The Defendant agrees that this sum does not reflect any proceeds obtained in connection with the dogfighting enterprise that were obtained by other means, such as through a physical cash transaction.

When agents searched Defendant's residence on September 6, 2023, they recovered five pitbull-type dogs from large metal cages in a windowless room of Defendant's basement. Agents also found several containers of animal medication, dog food, and protein powder in the same room, as well as the jumper-cable device referenced above, which Defendant used to kill dogs that were no longer fit for use in dogfighting. When interviewed by agents, Defendant stated that he had only recently obtained—within the past week—four of the five dogs found on the property. The dog that Defendant did not obtain recently was diagnosed as exhibiting calloused skin and an old injury, in addition to being infested with fleas. That dog had to be humanely euthanized after exhibiting extreme aggression toward both human caretakers and other dogs. Defendant agrees that he bred and/or trained all five dogs recovered from his property for the purposes of sponsoring them in dogfights.

During Defendant's interview with agents, he denied any involvement in dogfighting, claiming that he kept dogs seized from his property only because he admired the pitbull breed. Defendant further claimed to not be affiliated with multiple known dogfighters, which required agents to perform additional review of Defendant's electronic records, demonstrating that he was in regular contact with these individuals.

From: 08/22/2024 13:33 #045 P.012

SO STIPULATED:

_____
Alexander Levin
Darryl L. Tarver
Assistant United States Attorneys

_____
Frederick Douglass Moorefield, Jr.
Defendant

_____
Andrew C. White, Esq.
Counsel for Defendant

Rev. August 2018

12